UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON A. WILLIAMS,

                           Plaintiff,

v.                                                  **DECISION AND ORDER**
                                                     10-CV-499S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

      1.      Plaintiff Sharon A. Williams challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled due to C5-6 and L3-4 disc herniations and asthma since March 1, 2005. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Act.

      2.      Plaintiff filed Title II and Title XVI applications on March 5, 2007, alleging disability beginning March 1, 2005. The Commissioner of Social Security ("Commissioner") denied Plaintiff's initial applications. Plaintiff then requested a hearing. An administrative hearing was held on April 17, 2009 before ALJ Timothy M. McGuan, at which Plaintiff appeared and testified. The ALJ considered the case *de novo*, and on May 21, 2009, issued a decision denying Plaintiff's applications for benefits. Plaintiff filed a request for review with the Appeals Council, which, on June 1, 2010, denied Plaintiff's request for review. Plaintiff filed the current civil action on June 17, 2010, challenging Defendant's

final decision.[1]

3. On January 18, 2011, the Commissioner and Plaintiff both filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded February 18, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the

---

[1] The ALJ's May 21, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since March 5, 2007 (R. at 16);[2] (2) Plaintiff's C5-6 and L3-4 disc herniations and asthma are "severe" impairments within the meaning of the regulations (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 17.); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) with several limitations (R. at 19);[3] and (5) considering the Plaintiff's age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy that she could perform (R. at 22). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from March 5, 2007, through May

---

[2] Citations to the underlying administrative record are designated as "R."

[3] Plaintiff could only occasionally climb stairs, kneel, and reach overheard, and could not squat, or climb ladders, scaffolds, or ropes. (R. at 19.) Plaintiff was also to avoid concentrated exposure to fumes, dust, odor, wetness, humidity, and extreme cold, and should be accorded a sit/stand option after 45 minutes. (Id.)

21, 2009, the date of the ALJ's decision. (R. at 23.)

10. Plaintiff advances five challenges to the ALJ's decision. First, Plaintiff argues that the ALJ erred in not recontacting her treating physician. Second, Plaintiff argues that the ALJ did not properly assess the opinion of her treating physician pursuant to SSR 96-2p. Third, the ALJ's RFC assessment was not well-supported by substantial evidence. Fourth, the ALJ substituted his opinion for that of competent expert medical opinion. Fifth, Plaintiff contends that the ALJ erred in assessing Plaintiff's subjective complaints. Although these challenges are presented separately, many raise similar, or even identical arguments, and conflate others. This Court will nevertheless strive to address them sequentially.

11. Plaintiff's first challenge is that the ALJ erred in not, *sua sponte*, recontacting her treating physician, Dr. Seth Zeidman.[4] Plaintiff asserts that because Dr. Zeidman found her "temporarily totally disabled," the ALJ was required to recontact the physician to ascertain the basis of his opinions, before according them only limited weight. Plaintiff further asserts that failure to recontact Dr. Zeidman leaves her with no understanding of why her treating physician would find her disabled, but a government agency would not. Additionally, Plaintiff argues that a finding of total disability by Dr. Zeidman implies that whatever, necessarily severe, functional limitations he would have identified, had he been recontacted by the ALJ, would support her subjective complaints. This, in turn, would bolster her fifth challenge, that the ALJ improperly assessed her credibility.

12. An ALJ has an obligation to develop the administrative record, including, in

---

[4]Plaintiff incorrectly identifies her treating physician as "Dr. Zeldman"; a review of the citations in Plaintiff's memorandum and the ALJ's decision makes clear that Plaintiff is actually referring to Dr. Zeidman.

certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). The duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination. Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.")); see also 20 C.F.R. § 404.1512(e); 29 C.F.R. § 416.912(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision."); 20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . .").

13.     Here, letters from Dr. Zeidman, dated September 8, 2006, label Plaintiff temporarily totally disabled. (R. at 239.) The final determination of disability is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(e); 20 C.F.R. § 416.927(e); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("'A treating physician's statement that the claimant is disabled cannot itself be determinative.'") (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). Although "[r]eserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, [] it does not exempt administrative decisionmakers from their obligation, under Schaal and § 404.1527(d)(2), to explain why a treating physician's

opinions are not being credited." Snell, 177 F.3d at 134; Newbury v. Astrue, 321 Fed. Appx. 16, 17 (2d Cir. 2009) (summary order) (statement by doctor that individual is disabled does not constitute disability determination but still requires that ALJ "comprehensively set forth [the] reasons for the weight assigned to a treating physician's opinion").

14.  Contrary to Plaintiff's contentions, the ALJ did not err in giving Dr. Zeidman's opinion "limited weight" without recontacting him for additional information. The ALJ satisfied Snell by explicitly stating that he was giving the treating physician's opinion limited weight and explaining why this weight was accorded. Here, the ALJ found Dr. Zeidman's opinion inconsistent with the minimal limitations found on Plaintiff's physical examination. (R. at 22.) Dr. Zeidman found her totally disabled despite the fact that she evidenced "excellent" lower extremity motor strength, ambulated without assistance, had a "fairly" normal gait, and could stand from a sitting position without "much difficulty." (R. at 239.) Dr. Zeidman's other records echo these findings. (R. at 238, 240-253.) The ALJ was entitled to rely on this inconsistency. See 20 C.F.R. § 404.1527(d)(4) (listing as valid consideration the consistency of the treating physician's opinion). The mere fact that there is an inconsistency in a treating physician's opinion does not trigger a duty to recontact a physician, provided there is sufficient evidence from which to ascertain what weight an opinion is due. Further, there was no need to recontact Dr. Zeidman because, as will be discussed later, other substantial evidence supported the ALJ's disability determination. Plaintiff's first challenge is thus rejected.

15.  Plaintiff next argues, in her second challenge, that the ALJ failed to comply with the requirements of SSR 96-2p in assessing the opinion of her treating physician, Dr. Zeidman. Plaintiff reiterates various arguments made in her first challenge, including that

7

the ALJ failed to provide good reasons for not crediting her doctor's opinion. In so doing, and in then failing to recontact Dr. Zeidman, the ALJ's RFC assessment essentially became his own medical determination, an argument Plaintiff returns to later, in her fourth challenge.

16.     Boiled down, Plaintiff's argument is essentially that the ALJ failed to correctly apply the treating physician rule. Under the "treating physician's rule,"[5] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger, 335 F.3d at 106; Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." Snell, 177 F.3d at 132. Moreover, SSR 96-2p provides that:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

1983 WL 31251, at *5 (S.S.A. July 2, 1996). Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

8

treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). But a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e).

17. As this Court pointed out in addressing Plaintiff's first challenge, the ALJ properly found that a diagnosis of total disability on the basis of "very mild foraminal encroachment" was incompatible with the objective findings on physical examination. (R. at 22.) This supports the ALJ's decision not to give controlling weight to Dr. Zeidman's assessment. See Micheli v. Astrue, No. 10-CV-6655, 2011 WL 4074624, at *5 (W.D.N.Y. Sept. 13, 2011) (finding ALJ correctly gave less than controlling weight to treating physician where opinion was internally inconsistent).

Further, substantial evidence in the record conflicts with Dr. Zeidman's disability diagnosis. For example, consultative examiner Dr. George Sirotenko found that Plaintiff had moderate limitations regarding lumbar spine forward flexion, extension and rotation, as well as mild limitations in kneeling, squatting, and bending. (R. at 312.) A physical RFC assessment performed by disability examiner C. Kloepfer on June 13, 2007 found that Plaintiff could occasionally lift 20 pounds, and 10 pounds frequently; Plaintiff could also stand or walk for a total of six hours in an eight-hour workday, and also sit for six hours in the same period. (R. at 318.) That assessment also found that Plaintiff was to avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (R. at 320.) The

assessment concluded that Plaintiff's statements regarding her functional limitations were only "partially credible." (R. at 321.)  It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  In relying on these opinions, the ALJ was entitled not to give controlling weight to Dr. Zeidman's opinion. See 20 C.F.R. § 404.1527(d)(2) (treating physician's opinion given controlling weight where well-supported by medical evidence and not inconsistent with other substantial evidence). Plaintiff's second challenge is rejected.

18.  Plaintiff's third challenge is that the ALJ's RFC assessment was not well-supported.  Plaintiff provides a string of citations to the record that apparently support her contention that she could not sustain the full range of light work.  Plaintiff further asserts that no medical opinion supports the ALJ's decision, and consequently his assessment is conclusory.

19.  "The Commissioner defines RFC as a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'" Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  "The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities." Sorensen, 2010 WL 60321,

at *8 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The ALJ must consider all the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545). Then, after assessing the plaintiff's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

  20. In the present case, the ALJ determined that Plaintiff was capable of performing light work. Light work is defined in the regulations as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). Plaintiff's ability to perform such work, however, was subject to various limitations. (R. at 19.) These included only occasionally climbing stairs, kneeling, and reaching overheard. Plaintiff could not squat, or climb ladders, scaffolds, or ropes. (Id.) Plaintiff was also to avoid concentrated exposure to fumes, dust, odor, wetness, humidity, and extreme cold, and should be accorded a sit/stand option after 45 minutes. (Id.)

  Contrary to Plaintiff's assertions, in making this RFC assessment the ALJ relied on the medical opinions of Dr. Sirotenko and disability examiner Kloepfer. Their findings broadly support the ALJ's assessment. The June 13, 2007 physical RFC assessment, for example, found Plaintiff able to lift the amounts necessary to perform light work. (R. at 318.) It also identified the need for Plaintiff to avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (R. at 320.) Other limitations involving climbing stairs, kneeling, reaching, squatting, and climbing are traceable to Dr. Sirotenko's internal medicine examination. (R. at 312.) As to all these activities, Dr. Sirotenko found mild

limitations. (Id.) As previously noted, he also found moderate limitations in lumbar spine forward flexion, extension and rotation. (Id.)

Plaintiff's argument that the ALJ's RFC assessment is not well-supported is thus baseless, and is rejected.

21. In her fourth challenge, Plaintiff revisits many of the arguments already discussed, this time in the guise of arguing that the ALJ played the role of doctor in interpreting objective medical findings. This was error, Plaintiff asserts, because the ALJ was not competent to interpret raw medical data in the record.

22. As already discussed, the ALJ relied on competent medical opinion in reaching his decision. Far from interpreting the medical record unassisted, the ALJ's decision was based on Dr. Siroktenko's opinion and the physical RFC assessment. This Court has found no error in the ALJ's reliance on these sources. Plaintiff's fourth challenge is rejected.

23. Plaintiff's fifth challenge is that the ALJ improperly assessed her subjective complaints. According to Plaintiff, her subjective symptoms were entitled to great weight for being supported by objective medical evidence. Further, the ALJ was required to comply with 20 C.F.R. § 404.1529(c) and SSR 96-7p and explicitly consider various factors, which his decision omitted.

24. Credibility determinations are generally reserved for the Commissioner, not the reviewing court. Aponte v. Sec'y of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). In making a credibility determination, the ALJ will consider, in addition to a claimant's subjective medical history, several other factors, such as (i) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of

any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms. 20 C.F.R. § 404.1529(c)(3).

25.     As a preliminary matter, Plaintiff's argument that remand is warranted merely because the ALJ did not walk through each of the 20 C.F.R. § 404.1529 factors is without merit. "Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" Wischoff v. Astrue, No. 08-CV-6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07-CV-167-JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009)).

Substantively, the ALJ's credibility determination was also without error. The ALJ identified a number of inconsistencies in Plaintiff's testimony that cast doubt on her description of her symptoms' severity. The ALJ noted that Plaintiff's house was always spotless, despite Plaintiff's April of 2007 statement that she could not do much housework. (R. at 135.)[6] By May of 2007, however, Plaintiff stated that she was able to cook, clean, do laundry, and shop as needed. (R. at 310.) She also alleged that surgery, physical therapy, and chiropractic treatment did not ease her pain, but medical records dispute this claim. Physical therapy notes, for example, show that she felt "a little better overall" and was showing "gradual progress." (R. at 175-176.) Plaintiff also stated that she could not sit for more than 20 minutes before having to move around, yet sat through the entire April 17, 2009 hearing, which lasted from 9:23 a.m. to 10:03 a.m., without signs of pain. (R. at

---

[6]Plaintiff relied on her ten-year old daughter for cleaning. (R. at 135.)

13

21.) She also made statements as to the severity of her condition that nowhere appear in the medical record. For example, Plaintiff stated that she had to lie down for one or two hours everyday. Plaintiff's memorandum does not elaborate on why such remarks were not included in the physicians' notes. Such contradictory statements diminish Plaintiff's credibility. Accordingly, this Court finds no error in the ALJ's decision not to accept her testimony. Plaintiff's fifth challenge is rejected.

26. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 30, 2012
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court